# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :

v. : CRIMINAL NO. 04-267

PIETER REIDY

## GOVERNMENT'S SENTENCING MEMORANDUM

**I.   Introduction**

Pieter Reidy has been charged an information with conspiracy to possess with intent to distribute oxycodone (the Schedule II active ingredient in Percocet), in violation of Title 21, United States Code, Section 846 and possession with intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1). He entering a plea of guilty to the information.

**II.   Plea Agreement**

The government and the defendant have entered into a plea agreement, a copy of which is attached to this memorandum. In summary, the terms are as follows:

1.   The defendant agrees to plead guilty to the Information, waiving prosecution by Indictment, charging him with possession with intent to distribute controlled substances.

2.   The defendant agrees to pay the special victims/witness assessment in the amount of $100 before the time of sentencing.

3.   The defendant has expressly waived all rights to appeal as set forth in the plea agreement.

The parties have also entered into guideline stipulations, which are as follows:

(a) The parties agree and stipulate that the amount of the controlled substances possessed with intent to distribute is approximately 250 pills of Percocet, and approximately 13 kilograms of marijuana, which under the Drug Quantity Table equals 29.75 kg of marijuana, for a base offense level of 18, under 2D1.1.

(b) The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense making the defendant eligible for a 2-level downward adjustment under Guideline Section 3E1.1(a).

(c) The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty and timely providing complete information about his own involvement in the offense, making the defendant eligible for an additional 1-level downward adjustment under Guideline Section 3E1.1(b).

## III. __Maximum Sentence__

### A. __Statutory Sentence__

Count One and Count Two (21 U.S.C. § 841(b)(1)(D)-distribution of controlled substances) each carries a maximum sentence of 5 years imprisonment, a 3 year period of supervised release), a $1,000,000 fine, and a $100 special assessment.

### B. __Guideline Sentence__

The government agrees with the calculations set forth in the presentence investigation, which result in a total offense level of 13 and a guideline range of 12 to 18

months.

## IV. Legal Issues

### A. Stipulations in the guilty plea eliminate any Blakely issue.

In this case, the defendant stipulated in his plea agreement that all of the guideline enhancements apply. He agreed that based upon the quantity of drugs he possessed with the intent to distribute, his offense level was 18. Accordingly, this matter presents no issue under Blakely v. Washington, 124 S. Ct. 2531 (2004), even if (as the government disputes) Blakely applies to the federal guidelines.

In Blakely, the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 124 S. Ct. at 2537. As the Court further explained, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 124 S. Ct. 2540. In this case, there were stipulations, and therefore application of the guidelines is consistent with Blakely. Indeed, in the plea agreement, the defendant not only stipulated to the specific stipulations, but contemplated that the guidelines would apply in this case and agreed that "the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed."

### B. The Fact that the Defendant Was Not Aware of Blakely at the Time of His Plea is Immaterial.

3

The defendant nevertheless claims that, despite his stipulations, his guilty plea to the guidelines enhancements was not knowing, intelligent, and voluntary because he was not aware of Blakely's requirement that sentencing factors must be proven to a jury beyond a reasonable doubt. The defendant contends that he could not have waived his right to a jury trial on the sentencing factors because there was no "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). This argument fails, as the Supreme Court has repeatedly recognized that a guilty plea is not rendered invalid by subsequent legal developments that may affect the defendant's potential sentence or defenses.

When a defendant pleads guilty, he forgoes not only a trial, but also other accompanying constitutional guarantees. Boykin v. Alabama, 395 U.S. 238, 243 (1969) (guilty plea surrenders the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury). In order to comply with the Constitution, a guilty plea must be "voluntary" and any related waivers must be made knowingly and intelligently, and "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970).

In Brady, the Supreme Court held that a subsequent change in the law that may have influenced the defendant's decision to plead guilty did not render invalid an otherwise voluntary and intelligent guilty plea. Defendant Brady had been charged with kidnaping in violation of what was then 18 U.S.C. § 1201(a), which provided for the death penalty only upon recommendation of a jury. The defendant first pleaded not guilty, then changed his plea to guilty in order to avoid the possibility of a death sentence; he was sentenced to 50 years, later reduced to 30. Several years after his plea, in United States v. Jackson, 390 U.S. 570 (1968), the

4

Supreme Court ruled that the death penalty provision of Section 1201(a) was unconstitutional. The defendant filed a habeas petition contending that his plea was invalid because he had been coerced to plead guilty by the threatened application of a death penalty provision which turned out to be unconstitutional.

The Court ruled that the guilty plea was not rendered invalid by the subsequent decrease in the maximum penalty. The Court concluded that the possibility that the defendant's plea might have been influenced by an erroneous assessment of the sentencing consequences if he had proceeded to trial did not render his plea invalid, explaining that "absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Id. at 757. The Court further explained:

> The fact that the defendant did not anticipate the later change in the law does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Id.

Similarly, in McMann v. Richardson, 397 U.S. 759 (1970), the Supreme Court held that a defendant may not collaterally attack a guilty plea based on a mistaken legal assumption about the admissibility of his confession. In so ruling, the Court emphasized that its subsequent legal decision invalidating the evidentiary standard governing the admissibility of confessions at the time of the plea did not alter its conclusion as to the validity of the plea. Id. at

772-73. The Court explained:

> It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk or ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

Id. at 774.

Relying on Brady and McMann, the Supreme Court specifically rejected a challenge to a guilty plea on waiver grounds. In Tollett v. Henderson, 411 U.S. 258, 267 (1973), the defendant challenged the validity of his guilty plea on the basis of discrimination in the selection of the grand jury, a fact which was not known to the defendant at the time he pleaded guilty. The defendant argued that his guilty plea had not specifically waived this potential defense, but the Court disagreed. It noted that its decisions "have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty." Id. at 266. The Court stated:

> If the issue were to be cast solely in terms of 'waiver,' the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here. But just as the guilty pleas in the Brady trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury.

Id.[1]

---

[1] The Court further noted that the district court specifically informed the defendants that in pleading guilty, they were admitting guilt and waiving their right to a trial of any kind. Id. at 574.

6

The Supreme Court recently reaffirmed the Brady holding in United States v. Ruiz, 563 U.S. 622 (2002), where it rejected a constitutional challenge to a plea agreement waiver in which the defendant waived her right to disclosure of impeachment material. In rejecting the defendant's claim that the waiver was unconstitutional and rendered her plea involuntary, the Court, citing Brady, remarked that the Constitution "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant may labor." Id. at 630-31 (citations omitted). See also United States v. Sanchez, 269 F.3d 1250, 1283-85 (11th Cir. 2001) (relying on Brady in rejecting the defendants' arguments that Apprendi retroactively invalidated their guilty pleas because it reduced the maximum penalty and defendants claimed they only pleaded guilty because they thought they faced a life sentence).[2]

Although these cases involved post-sentencing challenges to the validity of the guilty pleas, the principles are equally if not more applicable in this context. The defendant knowingly and voluntarily entered into stipulations regarding the application of the guidelines, and expressly agreed that the court would make the ultimate decision as to the applicability of the Guidelines factors. The defendant does not argue that his guilty plea is invalid or seek to withdraw his plea, instead contending only that the Blakely decision precludes application of any sentencing factors that increase the defendant's sentence, including those to which he stipulated.

---

[2] The Sanchez court distinguished this situation, which involved the potential penalty, from that where the defendant had been misinformed about an essential element of the offense of conviction, noting that in that situation, the plea was invalid because the defendant had not admitted all of the essential elements of the offense. Id. at 1285 n. 64.

As in Brady, the defendant may not "disown his solemn admissions in open court" because of a subsequent legal pronouncement that may impact the potential penalties faced by the defendant. Because the defendant's knowing, intelligent, and voluntary guilty plea in this case "forecloses direct inquiry into the merits of claimed antecedent constitutional violations," Tollett, 411 U.S. at 266, the plea is valid in all respects and this Court may apply the admitted sentencing factors as anticipated by the guilty plea, and as expressly allowed by Blakely.

    C.    <u>The Absence of the Sentencing Factors in the Indictment/Information Is Harmless</u>.

Despite the stipulations, the defendant claims that the guideline enhancements may not apply because they were not alleged in the indictment. That is inaccurate. Given the stipulations, any absence of notice of the sentencing enhancement in the indictment is clearly harmless.

Pursuant to the harmless error rule set forth in Federal Rule of Criminal Procedure 52(a), "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The mandate of Rule 52(a), that all errors not affecting substantial rights must be disregarded, applies before the district court as well as the Court of Appeals. See C. Wright, et al., <u>Federal Practice and Procedure</u> § 851 ("Rule 52, describing how courts are to treat various kinds of errors, applies to both the trial court and the appellate courts. It is relied on primarily by appellate courts, although the standards it sets out are controlling when a trial court is passing on a post-trial motion. It also controls a trial court's pre-trial review of error in grand jury proceedings.").

The Supreme Court has "repeatedly reaffirmed the principle that an otherwise

valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (citations omitted).

"{O]n its face, Rule 52(a) admits of no broad exceptions to its applicability. Any assumption that once a 'substantial right' is implicated it is inherently 'affected' by any error begs the question raised by Rule 52(a). Assuming there is a 'substantial right,' the inquiry remains whether the error 'affects substantial rights' requiring reversal of a conviction. That kind of inquiry requires a review of the entire record." United States v. Lane, 474 U.S. 438, 448 n.11 (1986). In a case such as this involving alleged constitutional error, the question is whether any error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967).

The Supreme Court confirmed that the failure to allege a sentencing enhancement fact in an indictment is subject to Rule 52. United States v. Cotton, 535 U.S. 625 (2002) (in that case, applying plain error review under Rule 52(b), given the absence of at timely objection). See also Bank of Nova Scotia v. United States, 487 U.S. 250, 255-56 (1988) (irregularity in grand jury proceeding is subject to harmless error review); United States v. Zidell, 323 F.3d 412, 434 (6th Cir. 2003) (omission of element from indictment would be subject to harmless error review). The Cotton Court concluded that the asserted error -- the absence of an allegation of a

9

drug quantity which increased the maximum sentence from a level below the sentences actually imposed on the defendants -- did not affect the defendant's substantial rights. Because "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base," id. at 633, the Court concluded that there was no error worthy of correction under Rule 52.

The same conclusion applies here. Given the defendant's stipulation to the sentencing factors, it is plain that his substantial rights were not affected.

Putting aside the issue of harmless error, the stipulations also amounted to a waiver of any claim of defect in the charging document. United States v. Silva, 247 F.3d 1051 (9th Cir. 2001). In Silva, the defendants were charged in the indictment with a conspiracy to distribute an unspecified amount of methamphetamine, which carried a statutory maximum sentence of 20 years. Id. at 1059. The defendants entered into guilty plea agreements in which they admitted distributing more than 50 grams of methamphetamine, which carried a statutory maximum penalty of 40 years. Id. The agreements also contained a waiver provision in which the defendants agreed not to challenge their convictions or sentences. Id. at 1060. The court sentenced the defendants to 262 months, which exceeded the 20-year statutory maximum but was well within the 40-year maximum for distributing more than 50 grams of methamphetamine. Id. The defendants contended that their sentences violated Apprendi because they exceeded the statutory maximum for the crime charged in the indictment. The court rejected this argument, finding that the defendants had waived their right to a jury determination of the drug quantity by virtue of their guilty pleas, in which they admitted distributing more than 50 grams of methamphetamine and were informed of the applicable

statutory maximum for that amount. The court noted that an unconditional guilty plea waives the right to appeal "all non-jurisdictional antecedent rulings" and "cures all antecedent constitutional defects." Id., citing United States v. Reyes-Platero, 224 F.3d 1112, 1114 (9th Cir. 2000). As in Silva, the defendant here waived his right to challenge any defect in the charging of the sentencing enhancements when he entered a guilty plea which stipulated to the application of those enhancements.]

For all of these reasons, there is no bar in this case to the application of the sentencing enhancements stipulated in the plea agreement.

**C.    A departure is not appropriate in this case.**

Defendant argues that because he has volunteered his time for his father's charitable organization, a departure for post-offense rehabilitation is warranted. However, he has certainly not established that his conduct was so extraordinary so as to warrant a departure.

To justify a downward departure on the ground of extraordinary rehabilitative efforts while awaiting sentencing, the rehabilitative efforts must be "so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." United States v. Yeaman, 248 F.3d 223, 227 (3d Cir. 2001)(quoting United States v. Sally, 116 F.3d 76, 80 (3d Cir. 2001). "These rehabilitation efforts must be remarkable, indicate real, positive behavioral change, and demonstrate the defendant's commitment to repair and rebuild his or her life." Yeaman, 248 F.3d at 228 (internal quotations omitted). Reidy does not come close to meeting this standard.

Defendant first states that he immediately proffered with the government and detailed his criminal activities after his arrest. However, while he admitted that he committed

the crime for which he was prosecuted, he fails to note that the government did not find him credible regarding the surrounding circumstances of the crime. He refused to tell the government where he obtained the large quantity of marijuana that was in his car, and he refused to assist the government in identifying other individuals with whom he was involved. It is certainly any defendant's right to refuse to cooperate in other investigations. However, it is disingenuous to claim that by admitting the crime for which he was caught redhanded, Reidy has somehow "detailed his criminal activities." For these reasons, the defendant did not receive a cooperation plea agreement with the government.

Defendant next states that he has overcome substantial physical adversity. He is certainly to be commended for his determination to lead a normal life despite his surgeries for spina bifida. However, these efforts occurred long before this offense and cannot be considered the type of rehabilitative conduct that shows Reidy has turned his life around as a result of this offense.

Finally, Reidy contends that his work with Operation Smile is so exceptional that he should be granted a departure. While Operation Smile is certainly a worthy organization, it can hardly be said that Reidy himself has so contributed to that organization to warrant a departure. Operation Smile is an organization with which Reidy's father is associated. Reidy may hope that in the future he can help that organization, and may certainly contribute a great deal, but there is no reason why Reidy cannot work with Operation Smile after he pays for his crime. The letters and materials that Reidy has submitted to the Court detail the work that the organization does and the hope the Reidy can be part of the organization, but there is no evidence that to date Reidy has contributed so extraordinarily so as to take his case out of the

heartland.

Reidy now comes before the Court and states that he has a unique opportunity to work with a charitable organization to which he has the ability to contribute a great deal. However, that organization has been part of his family for virtually his entire adult life. It is only now that he attempts to use it to further his attempts to remain out of jail. He has not made any significant contribution to date.

## IV.     Sentencing Recommendation

The government respectfully requests that the Court sentence Reidy to a term of imprisonment at the top of the guideline range of 12 to 18 months. A sentence of imprisonment is necessary to address the severity of the crime. Reidy is responsible for distributing oxycodone, one of the most addictive drugs available. This was an ongoing offense and over time Reidy distributed a large amount of drugs. He is a well educated, intelligent individual who had opportunities not available to other less fortunate individuals, and yet he squandered those opportunities and chose to commit this crime.

                         Respectfully submitted,

                         PATRICK L. MEEHAN
                         United States Attorney

                         AMY L. KURLAND
                         Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this date, November 16, 2004, I have caused to serve via facsimile a copy of the Government's Sentencing Memorandum on the following:

Brian J. McMonagle, Esquire
McMonagle Perri & Hugh
One Penn Center Square West
Suite 701
30 S. 15th Street
Philadelphia, PA 19102

_____
AMY L. KURLAND
Assistant United States Attorney